UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

FREDY WALDEMAR CORTEZ
LUGOS,

      Petitioner,

v.

MARKWAYNE MULLIN, et al.,

      Respondents.

Case No. 5:26-cv-01880-KES

ORDER PARTIALLY GRANTING
PETITION FOR WRIT OF HABEAS

## I.    PROCEDURAL HISTORY

On April 16, 2026, Fredy Waldemar Cortez Lugos ("Petitioner") filed a counseled habeas petition under 28 U.S.C. § 2241 alleging that he was being illegally detained by the Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE"). ("Petition" at Dkt. 1.) The Petition alleges that the Adelanto Immigration Court determined that he was an "arriving alien" and it therefore lacked jurisdiction to conduct a bond hearing. (Id. at 7-8.) In the Petition, Petitioner contends that he is not an "arriving alien" and is entitled to a bond hearing under the rationale of Maldanado Bautista v. Santacruz, C.D. Cal. case no. 5:25-cv-01873-SSS-BFM. (Id.)

In the Answer, Respondents maintain that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(1) for arriving aliens and "certain other aliens

1

who have not been admitted or paroled." (Dkt. 9.)  Respondents attach Petitioner's Notice to Appear ("NTA"), dated May 18, 2024.  (Dkt. 9-1.)

In response to the Court's request for supplemental briefing (Dkt. 11), Petitioner clarifies that there was a misunderstanding due to a Spanish translation, and he does not dispute the authenticity of the NTA.  (Dkt. 12 at 2.)  Rather than arriving without admission or inspection, Petitioner was paroled into the United States on May 18, 2024, pursuant to 8 U.S.C. § 1182(d)(5) and was thereafter subject to Intensive Supervised Appearance Program ("ISAP") release, which required monthly home visits to confirm his compliance.  (Id. at 5.)  Petitioner was detained by ICE at a routine check-in appointment on April 14, 2026, ten days before his parole was set to expire.  (Id. at 7; see also Dkt. 1 at 7.)  Petitioner cites Gardaloev v. Lyons, a case in which this Court granted the petitioner's immediate release from immigration detention on due process grounds.  (Dkt. 12 at 3); see Gardaloev, C.D. Cal. case no. 5:26-cv-00800-JGB-KES.

Petitioner brings three claims for relief:

Claim One: As a matter of statutory construction, Petitioner's detention is governed by § 1226(a), not § 1225(b)(2)(A) which requires mandatory detention for "other aliens" who are not "arriving aliens" but are still applicants for admission. (Dkt. 1 at 8-8); see 8 U.S.C. § 1225(b)(2)(A).

Claim Two: If § 1225(b)(2)(A) governs, Petitioner's mandatory detention nevertheless violates his procedural due process rights as a long-term resident. (Dkt. 1 at 9.)

Claim Three: The DHS policy expanding § 1225(b)(2)(A) detention to individuals long present in the United States violates the Administrative Procedures Act ("APA").  (Id. at 9-11.)

For the reasons stated below, the Court finds that Respondents violated Petitioner's procedural due process rights, PARTIALLY GRANTS the Petition, and ORDERS Petitioner's immediate release from custody.

## II.   FACTUAL BACKGROUND

The verified Petition alleges that Petitioner has lived in the United States since 2021.  (Dkt. 1 at 2.)  The NTA is dated May 18, 2024.  (Dkt. 9-1 at 1.)  It was issued in the border community of San Ysidro, California, and it orders Petitioner to appear before an immigration judge of the United States Department of Justice in October 2024 in Santa Ana, California, to show why he should not be removed from the United States.  (Id.)  The NTA also tells Petitioner that he must keep DHS apprised of his current address and telephone number and warns Petitioner of the consequences of failing to appear at the removal hearing.  (Id. at 2.)

The NTA has a checked box indicating, "You are an arriving alien."  (Id. at 1.)  No one checked the box indicating, "You are an alien present in the United States who has not been admitted or paroled."  (Id.)  It identifies Petitioner as a citizen of Guatemala who "applied for admission on 05/18/2024 at San Ysidro, CA, USA."  (Id.)  The NTA says that Petitioner is subject to removal from the United States pursuant to section "212(a)(7)(i)(I) of the Immigration and Nationality Act (Act), as amended, as an immigrant who, at the time of application for admission, is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document required by the Act, and a valid unexpired passport, or other suitable travel document, or document of identity and nationality as required under the regulations issued by the attorney general under Section 211(a) of the Act."  (Id. at 4.)

The NTA has a typed signature for "CBP Officer" and the typed name "Ruiz, Car36722."  (Id. at 1.)  A certificate of service attached to the NTA says that the form was served in person, but there is an illegible digital signature of the individual who was personally served.  (Id.)  But Petitioner does not contest the authenticity of the NTA.  (See Dkt. 10.)  In fact, since receiving the NTA, Petitioner has appeared several times for routine ICE check-in appointments.  (Dkt. 1 at 2.)  Despite having no criminal record or other changed circumstances, Petitioner was

3

arrested by immigration authorities during one such check-in on April 14, 2026, in San Bernardino, California, hundreds of miles from any port of entry.  (Id. at 2-3.)

While Petitioner remains detained, his U.S.-citizen fiancée—who suffers from cerebral palsy, a condition that limits her mobility and speech—is pregnant and expected to give birth to the couple's first child on or around a due date of May 11, 2026.  (Id. at 7.)

## III.   DISCUSSION

### A.   Petitioner Has Not Shown that He Is Entitled to Relief on Claim One: That Petitioner's Detention Should Be Governed by § 1226(a).

Respondents argue that Petitioner is an arriving alien subject to mandatory detention under 8 U.S.C. § 1225(b)(1), which does not provide for an initial bond hearing.  (Dkt. 9 at 2.)  Petitioner counters by pointing out the "fundamental legal contradiction" in which "DHS has checked the box [in the NTA] designating [him] as an 'arriving alien,' and simultaneously initiated full removal proceedings and lodged charges of removability.…  If Petitioner had not been admitted, he cannot be treated as an alien who is properly placed in removal proceedings premised on removability in the same manner as an admitted noncitizen.  Conversely, if the government is proceeding … with formal [removal] charges, then its reliance on § 1225(b) mandatory detention is misplaced."  (Dkt. 10 at 2.)  As Petitioner notes, "Respondent's Answer provides no explanation reconciling this inconsistency.  It simply asserts that Petitioner is an arriving alien subject to mandatory detention, without addressing the legal consequences of having issued an NTA initiating removal proceedings."  (Id. at 3.)

Many courts have found that it makes no sense to apply § 1225(b) to noncitizens who entered without inspection and were later apprehended by ICE, because these noncitizens were never "seeking admission" in the ordinary meaning of that phrase.  See 8 U.S.C. § 1225(b)(2)(A) ("[I]n the case of an alien who is an applicant for admission, if the examining immigration officer determines that an

alien *seeking admission* is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained ….") (emphasis added); see, e.g., Arrazola-Gonzalez v. Noem, No. 5:25-cv-01789-ODW-DFM, 2025 WL 2379285, at *2, 2025 U.S. Dist. LEXIS 158808, at *6 (C.D. Cal. Aug. 15, 2025) (finding that the petitioners were likely to succeed on the merits where they "argue[d] that § 1225(b) applies to those 'seeking admission,' meaning those who take 'affirmative acts, like submitting an "application for admission"' or *subject to inspection at a border* or upon arrival before an immigration officer") (emphasis added).  Here, Petitioner either entered *with* inspection at a border and was therefore at one point "seeking admission," or he was already living in the United States for approximately three years when he received the NTA in San Ysidro.  In the latter scenario, Petitioner would not have been "seeking admission."

Regardless of how or why Petitioner entered the United States, he was granted parole.  Specifically, Petitioner was released on humanitarian or significant public benefit parole.  (See Dkt. 12 at 4 (stating that Petitioner was admitted under category "DT").)  According to the U.S. Citizenship and Immigration Services website, "[Noncitizens] who are outside of the United States may request to be paroled into the United States based on urgent humanitarian reasons or a significant public benefit.  These [noncitizens] are not paroled into the United States under a categorical parole program or process.  Often, the Class of Admission (COA) for these [noncitizens] is 'DT' though other parole related COAs may have been used."  See FAQs on the Effect of Changes to Parole and Temporary Protected Status (TPS) for SAVE Agencies, U.S. Citizenship & Immigr. Servs., https://www.uscis.gov/save/current-user-agencies/guidance/faqs-on-the-effect-of-changes-to-parole-and-temporary-protected-status-tps-for-save-agencies (last visited April 30, 2026) (click "What does 'Non-Categorical Parole' mean?").  The Immigration and Nationality Act provides for humanitarian parole as follows:

The Secretary of Homeland Security may … in his discretion parole

into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States, but such parole of such alien shall not be regarded as an admission of the alien and when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter ***his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States***.

8 U.S.C. § 1182(d)(5)(A) (emphasis added).

Pursuant to the above emphasized language in the parole statute, "although Petitioner was paroled under § 1182(d)(5)(A), granted release, and granted admission into the United States, the statute creates the legal 'entry fiction' that Petitioner has not been granted admission and is still an individual seeking admission." Osuna Benitez v. Hermosillo, No. 25-cv-02535, 2025 WL 3763932, at *3, 2025 U.S. Dist. LEXIS 267678, at *7 (W.D. Wash. Dec. 30, 2025) (citation modified). This creates "the oddity of treating Petitioner who applied for entry … worse than a person who did not enter at a port of entry and instead impermissibly sneaked across the border in violation of the law." Id. That said, because of this language, Petitioner arguably falls within the mandatory detention provision in § 1225(b)(2)(A). Id.[1] Petitioner does not adequately address this language or how

---

[1] But see, e.g., Gutierrez Navarro v. Noem, No. 26-cv-00334, 2026 WL 482686, at *4, 2026 U.S. Dist. LEXIS 35352, at *8-9 (W.D. Wash. Feb. 20, 2026) ("Petitioner initially presented as an 'arriving alien' when he presented himself to immigration officers at a point of entry for his government sanctioned CBP-One appointment at a port of entry in Laredo, Texas.… However, he was simultaneously issued an I-94, which is an interim parole document that was valid for two years.… There is no evidence in the record petitioner was released under 8 U.S.C. § 1182(d)(5)(A). Petitioner has been in the community for over two years, was

it affects his statutory claim. Accordingly, Petitioner has failed to demonstrate that he is entitled to relief on Claim One.

However, that point of statutory interpretation does not end the Court's inquiry. As discussed below, Petitioner's nearly two years of parole in the United States and "the connections Petitioner made with his community during that time" create a significant liberty interest that is protected by the Due Process Clause. Garcia v. Andrews, No. 2:25-cv-01884-TLN-SCR, 2025 WL 1927596, at *4, 2025 U.S. Dist. LEXIS 133521, at *11 (E.D. Cal. July 14, 2025); see also Osuna Benitez, 2025 WL 3763932, at *3, 2025 U.S. Dist. LEXIS 267678, at *7-8 ("That Petitioner is subject to mandatory detention under § 1225 does not end the Court's inquiry. The Due Process Clause applies regardless of whether the noncitizen's presence is lawful, unlawful, temporary, permanent and regardless of whether detention falls under § 1225 or § 1226."); Margaryan v. Bondi, No. 5:26-cv-877-FMO-PD, 2026 WL 790879, at *3 n.6, 2026 U.S. Dist. LEXIS 62652, at *7 n.6 (C.D. Cal. Mar. 16, 2026) ("The court finds it irrelevant whether petitioner was originally detained pursuant to § 1225(b) and paroled pursuant to § 1182(d)(5)(A), or whether he was detained and paroled pursuant to § 1226(a). That is because the respondents' failure to provide the petitioner with any pre-deprivation notice or opportunity to be heard whatsoever was constitutionally deficient.") (citation modified).

**B.    Petitioner Is Entitled to Relief on Claim Two: Violation of Due Process.**

**1.    The Parties' Arguments.**

Petitioner argues, "Even if § 1225(b)(2)(A) were construed to apply, its application without individualized review violates the Fifth Amendment's Due

---

granted TPS [temporary protected status], received employment authorization, and complied with reporting requirements. At the time of his re-detention, he was not seeking admission at the border. Accordingly, petitioner is an admitted individual whose redetection is governed by § 1226, and not an individual 'seeking admission' under § 1225.").

Process Clause…. The government's categorical denial of bond hearings to long-term residents, based solely on its re-characterization of them as 'arriving aliens,' is arbitrary and disproportionate to any legitimate immigration purpose." (Dkt. 1 at 9.) Respondent's Answer does not address this claim. (See Dkt. 9.)

**2.     Legal Standard.**

The Due Process Clause of the Fifth Amendment prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law." U.S. Const. Amend. V  The right to due process extends to "all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001).

"The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" Mathews v. Eldridge, 424 U.S. 319, 333 (1976) (quoting Armstrong v. Manzo, 380 U.S. 545, 552 (1965)). "[T]he Due Process Clause of the Constitution may require greater procedural protections than a statutory or regulatory scheme provides when freedom from imprisonment is at stake." Perez Bueno v. Janecka, No. 5:25-cv-03376-CAS-BFM, 2026 WL 309934, at *3, 2026 U.S. Dist. LEXIS 24644, at *7 (C.D. Cal. Feb. 5, 2026). To determine what procedural protections an individual is owed in the event of a government deprivation of a protected liberty interest, courts balance three factors: (a) the private interest that will be affected by the official action, (b) the risk of an erroneous deprivation of such interest and the value of additional procedural safeguards, and (c) the countervailing government interest. Mathews, 424 U.S. at 335.

**3.     Analysis.**

a.     Private Interest Affected

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process]

8

Clause protects." Zadvydas, 533 U.S. at 690.

"To determine whether a specific conditional release rises to the level of a protected liberty interest, courts have resolved the issue by comparing the specific conditional release in the case before them with the liberty interest in parole as characterized by Morrissey v. Brewer, 408 U.S. 471 (1972).'" Omer G. G. v. Kaiser, No. 25-cv-01471, 2025 WL 3254999, at *5, 2025 U.S. Dist. LEXIS 230551, at *11-12 (E.D. Cal. Nov. 22, 2025) (citation modified).

> In Morrissey, the Supreme Court explained that parole from a criminal conviction "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life." Morrissey, 408 U.S. at 482, 92 S.Ct. 2593. "Though the [government] properly subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring and seeking authorization to work and travel, his "condition is very different from that of confinement in a prison." Id. "The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." Id. The revocation of parole undoubtedly "inflicts a grievous loss on the parolee." Id. (quotations omitted). Therefore, a parolee possesses a protected interest in his "continued liberty." Id. at 481-84, 92 S.Ct. 2593.

Id.

In the present case, as discussed above, Petitioner was granted humanitarian or significant public benefit parole under § 1182(d)(5)(A). DHS regulations provide that, to be granted such parole, the noncitizen must "present neither a security risk nor a risk of absconding." 8 C.F.R. § 212.5(b). The regulations also provide that such parole shall be terminated as follows: "[U]pon accomplishment of the purpose

for which parole was authorized or when in the opinion of one of the officials listed in paragraph (a) of this section, neither humanitarian reasons nor public benefit warrants the continued presence of the alien in the United States, parole shall be terminated upon written notice to the alien…." 8 C.F.R. § 212.5(e)(2)(i).

Courts have regularly held that noncitizens paroled into the United States under § 1182(d)(5) have a liberty interest protected by the Fifth Amendment Due Process Clause, particularly where the noncitizen has been living in the United States on such parole for a matter of years. See, e.g., Medrano-Rocha v. Santacruz, No. 26-cv-00404-KK-AGR, 2026 WL 411355, at *3, 2026 U.S. Dist. LEXIS 39284, at *7-8 (C.D. Cal. Jan. 23, 2026) ("While the Government's initial decision to parole Petitioner was discretionary, see 8 U.S.C. § 1182(d)(5), that decision nonetheless contained an 'implicit promise that parole will be revoked only if he fails to live up to the parole conditions.' For nearly three years, Petitioner relied on this promise to become 'gainfully employed,' live 'with family and friends,' and 'form the other enduring attachments of normal life.' The length of Petitioner's release on parole further strengthens his private interest in his continued freedom from immigration detention.") (citation modified) (quoting Morrissey, 408 U.S. at 482); see also Nieves v. Mullin, No. 5:26-cv-01471-DOC-DSR, 2026 WL 931143, at *3, 2026 U.S. Dist. LEXIS 77391, at *6-7 (C.D. Cal. Apr. 1, 2026).

According to Petitioner, he has lived in the United States since 2001. At the very least, Petitioner has lived in this country for nearly two years, based on the NTA. During that time, he has become engaged to a U.S. citizen and is expecting the birth of his baby (also a U.S. citizen) any day now, based on his fiancée's May 11, 2026, due date. (Dkt. 1 at 2, ¶ 1; see also id. at 7.) He resides in Perris, California, and has no criminal record. (Dkt. 1 at 7.) Respondents do not dispute these facts.[2] Petitioner therefore has a substantial private liberty interest, protected

_____

[2] Petitioner's I-94 states, "Admit Until Date: 2026 April 24." (Dkt. 12 at 7.) Respondents do not address if Petitioner's humanitarian or public benefit parole

by the Due Process Clause, in remaining out of custody on parole.

b.    Risk of an Erroneous Deprivation and Value of Additional Procedural Safeguards

Civil immigration detention is "nonpunitive in purpose and effect" and is permissible only to reduce the risk of flight or danger to the community. Zadvydas, 533 U.S. at 690. "In releasing Petitioner on humanitarian or significant public benefit parole…, [DHS] necessarily found Petitioner did not pose a significant flight risk or danger to the community." Medrano-Rocha, 2026 WL 411355, at *4, 2026 U.S. Dist. LEXIS 32984, at *9. Respondents have never explained—neither to Petitioner at the time of his arrest, nor in the present proceedings—what factual basis they have (if any) for changing that determination.[3]

A pre-deprivation hearing would require the government to produce its evidence of changed circumstances and give Petitioner an opportunity to challenge that evidence. This is a significant procedural safeguard. Without written notice, in compliance with 8 C.F.R. § 212.5(e)(2)(i), and a meaningful, individualized bond hearing, "the risk of an erroneous deprivation of liberty is high because neither the government nor [Petitioner] has had an opportunity to determine whether there is any valid basis for [his] detention." Fernandez v. Semaia, No. 5:25-cv-03412-SPG-MBK, 2026 WL 136229, at *5, 2026 U.S. Dist. LEXIS 10909, at *16-17 (C.D. Cal. Jan. 13, 2026). "A pre-detention hearing would afford Petitioner the opportunity to demonstrate he does not pose a danger to the community or flight risk. In contrast,

status has expired and how, if at all, this affects his liberty interest. As noted above, they do not dispute that Petitioner has a protected interest in his liberty.

[3] "Indeed, it does not appear that respondents complied with even the limited amount of process contemplated by the relevant statutes and regulations," i.e., written notice prior to revocation of his parole. Margaryan, 2026 WL 790879, at *5 n.8, 2026 U.S. Dist. LEXIS 62652, at *11 n.8. Neither party has submitted a copy of any written notice served on Petitioner.

11

without the additional procedural safeguard of a pre-detention hearing, ICE could, as it appears to have done so here, unlawfully re-detain Petitioner at any time, regardless of whether his detention serves any valid governmental interest." Medrano-Rocha, 2026 WL 411355, at *4, 2026 U.S. Dist. LEXIS 32984, at *10.

c.    Countervailing Government Interest

"Respondents have failed to identify any countervailing governmental interest whatsoever, let alone one that would outweigh Petitioner's interest in a pre-deprivation hearing." Fernandez, 2026 WL 136229, at *6, 2026 U.S. Dist. LEXIS 10909, at *19. Additionally, the burden of a pre-detention hearing is low. In immigration court, custody hearings are routine and impose a minimal cost. In this Court's experience, Respondents are routinely able to comply with orders requiring that such a hearing be held within seven days. Respondents have presented no evidence to the contrary.

d.    Appropriate Relief

Besides stating that mandatory detention under § 1225(b)(1) should apply to Petitioner, Respondents do not weigh in on the question of relief. (See Dkt. 9.) Petitioner asks the Court to release him from immigration detention immediately or, in the alternative, order an individualized bond hearing within seven days. (Dkt. 1 at 11.)

Here, releasing Petitioner is narrowly tailored to the specific wrong, since it restores the status quo that was in effect before Respondents violated Petitioner's due process rights. Moreover, allowing the government to "cure" such a violation by providing a post-detention hearing would effectively render any holding that a pre-detention hearing is required meaningless; the government could always wait until a habeas petition is filed and then offer to hold a hearing. Many courts have found that a post-detention bond hearing is insufficient in this context. See Gudavasov v. Marin, No. 5:26-cv-00541-AH-MBK, 2026 WL 712827, at *3, 2026 U.S. Dist. LEXIS 49484, at *7 (C.D. Cal. Mar. 9, 2026) (collecting cases finding

12

that release, rather than a post-detention bond hearing, is the appropriate remedy).[4] In fact, courts have most frequently found that this type of due process violation warrants *both* immediate release from custody *and* an injunction preventing further violations of Petitioner's due process rights.  See, e.g., Medrano-Rocha, 2026 WL 411355, at *7, 2026 U.S. Dist. LEXIS 32984, at *17-18 (ordering the petitioner's release and enjoining re-detention "without providing him a pre-detention hearing before a neutral decisionmaker where Respondent bears the burden of demonstrating by clear and convincing evidence that Petitioner is a flight risk or a danger such that his physical custody is required"); Nieves, 2026 WL 931143, at *4, 2026 U.S. Dist. LEXIS 77391, at *11 (granting release and enjoining re-detention "unless his re-detention is ordered at a custody hearing before a neutral arbiter and the government has shown justification for this detention"); Fernandez, 2026 WL 136229, at *7, 2026 U.S. Dist. LEXIS 10909, at *25 (ordering release and enjoining re-detention "unless [Respondents] demonstrate, by clear and convincing evidence at a pre-deprivation bond hearing before a neutral decisionmaker, that there has been a material change in circumstances justifying Petitioner's re-detention").

Based on the weight of this persuasive authority, the Court should enter both types of relief here.

## C.    Claim Three Is Denied Without Prejudice as Moot.

Because relief is granted on Claim Two, the Court does not reach the merits of Claim Three.

---

[4] Aguilar v. Semaia, No. 5:26-cv-00023-MCS-SSC, 2026 WL 166906, at *5, 2026 U.S. Dist. LEXIS 13697, at *14 (C.D. Cal. Jan. 16, 2026)—a case in which the court found that a post-deprivation hearing was sufficient relief—is factually distinguishable because Aguilar "received significantly more process than in other cases in which courts have granted relief under Mathews," including appointment of counsel in his immigration case (due to incompetency) and a recent, post-arrest hearing before an Immigration Judge.

## IV.   THE COURT'S ORDER

IT IS THEREFORE ORDERED that the Petition is GRANTED IN PART, as follows:

1. Claim Two is granted.

2. Claim One is denied

3. Claim Three is denied as moot.

4. Respondents shall **immediately release** Petitioner from custody and **file a status report by Tuesday, May 5, 2026**, confirming they have done so; and

5. Respondents are enjoined from re-detaining Petitioner without providing him with (a) written notice that complies with 8 C.F.R. § 212(e)(2)(i), and (b) a pre-detention hearing before a neutral decisionmaker at which Respondents bear the burden of demonstrating that there has been a material change in circumstances justifying Petitioner's re-detention.

It is so ordered.

DATED:  <u>May 1, 2026</u>

_____
KAREN E. SCOTT
United States Magistrate Judge

14